Heredie, heredie, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson, presiding. Please be seated. Your Honor, the final case on the docket this morning is 2-23-004. The people of the state of Illinois plaintiff Appellee v. Douglas J. Moeller, defendant. Our jury will be headed by Ms. Joyce J. Perko. Our jurors will be headed by the Appellee, Ms. Stephanie Hoyts-Peele. Ms. Perko, if you are ready, you may proceed. Thank you. Lower that, maybe? A little bit more. We don't want it in your eyes. Good morning, and may it please the Court. Douglas Moeller appeals from his conviction for non-consensual dissemination of a private sexual image. We attack the conviction through three arguments, the first being reasonable doubt, the second being constitutionality of the statute, and the third being a claim of due process violation implicating the right to compulsory process. Ms. Perko, I know we have limited time, as you're aware. We're sorry we're late, and we'll give you as much time as you're entitled to as well. But let's talk about the constitutionality of the statute. It may not be the order that you wanted to go with, if you would. The Supreme Court has recently told us what to do. How can we say that they were wrong? Well, the issue of deciding something that doesn't exist, I'll submit, is a lot more difficult than assessing the validity of something that does exist. And with reference to the constitutionality of the statute, there is not even a statutory description of what is meant by an act of bondage or an act of bondage or other act of a sexual nature. There is no definition, statutory definition of beyond a reasonable doubt either. And we are specifically told, and we tell trial courts, you may not define that. So why is this so different? Well, because you must define a statute. The law is substantially different from defining a statute or defining reasonable doubt. I would submit that reasonable doubt is the single exception to the rule that, in general, legal matters must be clear and clearly defined, this being especially true in the criminal sphere, but even in the civil sphere. But it's true in a lot of statutes that the terms aren't defined, in which case the court uses the plain, ordinary and popular meaning. And they often refer to dictionaries. And that happens a lot. So that, in and of itself, or do you contend that that, in and of itself, just makes it unconstitutionally vague? No, that's fine. But what we're dealing with in this case is a question of sexual bondage or sexual activity. There really is no, this is really not a matter of common knowledge. I mean, one would have to ask themselves when the last time it was that they sat down to a family dinner and started discussing the issue of bondage. It is just not fair to assess criminal bondage as something that one would know from past experience or private experience or common knowledge, because it is not a matter of common knowledge. And, you know, in this regard, I would point generally to the state's position in this case, where they have not even responded to our claim of the nature of sexual bondage. And to me, this is the same kind of problem we're looking at now when we're talking about the constitutionality of the statute. When something doesn't exist, it is extremely difficult to explain what should have happened or what should have been disclosed. And this statute doesn't, you know, the test for sufficiency of a statute where there is a vagueness challenge. The question is whether or not adequate notice has been given to ordinary people of the prohibited conduct. Well, one would question what ordinary people are generally discussing the matter of sexual bondage. And I would submit that it's largely appellate lawyers in a forum like this. But there's just so we're talking about something that we're alleging is absent, and it's something that we rarely see in any context whatsoever. What about just looking at the language of the entire statute, 720 ILCS 511-23.5? They're all, and then the sexual activity, obviously, section in particular, they're all unusual when you add an animal to the process. They're not things that people would really otherwise know. I mean, they're the act of urination within a sexual context, not something, we know what urination is, but we don't know what it is within a sexual context. So they're all unusual, and don't you have to look at the distinctions that are made in the statute, because five here is sadomasochism, abuse in any sexual context, which would seem to eliminate number five from the concepts of number four, any bondage, fetter, or sadism, masochism, which I'm not exactly sure what those two mean. And we know what fettering means, it means tying. And so we've got bondage, fettering, or sadomasochism, but not the one in number five. It's separated for a purpose. But some of those examples that you've given, for instance, urination, that is a common, while it may not be a common occurrence in the forensic forum, I mean, it is something that everyone would know what that means. But urination in a sexual context? I mean, I know what urination means, but in a sexual context? Well, I mean, that raises issues of notice. And the statute has a particular, I mean, that is the very test, you know, is there sufficient notice of what is prohibited? And there's virtually no notice except the name of the offense. So there's really no other notice involved. Well, then let me ask this. The two board members who saw it, especially Miss Hess, she said the minute she saw it, she was like, there's something sexual going on. And I'm not sure exactly what Mr. Howard or what the gentleman said, but sex was in part of his description of what he thought was going on. The picture that was sent in reply clearly indicates that whatever was going on there encouraged sexual activity by yet another. So how can it not be understood? But sexual conduct means absolutely nothing without some example. And the sexual conduct in this case, from the early point of the litigation, the defense sought a bill of particulars to determine what the nature of the sexual conduct being alleged was. And the answer was that it was bondage or fettering. But I've pointed out in my briefs that the fettering seems to have gone by the wayside during the course of the litigation. So this is an act of bondage that is alleged. It's not some other kind of sexual activity. And certainly due process would require more notice than the name of an offense, bondage, you know, to give notice. That doesn't give notice very much except that you could be told that you're looking at sexual bondage. So then you know that you have something vaguely attached to sex. But you don't know any more about it. I mean, if we're talking about the statute then, and then I've sort of drifted into what our claim is, our first claim, which is reasonable about issue. Well, but the victim said that your client was asking for, or she believed he was asking for something provocative, something unusual. I don't think she used that term, but I think she did use provocative at one point in her testimony. She chose this picture. And her choice of this picture, certainly viewing the picture as provocative. We would agree that it's a provocative picture. And at some level it evokes a question of sexual conduct. But what is the sexual? But I mean, the sexual, that's truly, I would submit, a very innocuous term. I mean, there has to be something else involved. And we know what the state said was involved. And what the state is saying is involved is sexual conduct. And that is the entire structure of the legislation, to identify with more specificity. But the problem in this case is that it simply doesn't, the evidence simply doesn't show bondage. I mean, we have set in our brief roughly about a dozen cases or so that talk about bondage, sexual bondage. And all of these cases involve sometimes horrifying descriptions of pain or other activity that is identified as sexual bondage. In this case, I would submit it is hard to imagine what was going on in that hotel room that preceded the creation of this image, Exhibit No. 2 at trial. And we are clear that this picture, from the evidence, we're clear that this picture was taken before the request started by your client. That would be my understanding of the timeline. So it wasn't set up for his benefit. It was something that she was engaging in with one of her meetups that she had over a period of time. Correct. Of which we know virtually nothing. I mean, so I'm not sure I want to know a lot more. Well, and that may be everybody's approach to it. But, I mean, this is a felony offense that we're talking about here. And, I mean, we cannot proceed to a felony level and look at, you know, what's just in that context without a knowledge of what we're really talking about. And all we really know that we're talking about is something that vaguely hints at sex. I mean, as far as the photograph, Exhibit No. 2, it shows, as I was writing and trying to describe the conduct, I came to the question of, well, physically, what was happening? And I'm looking at this, and this woman is kind of looking into space. I mean, it's a still photograph, so we don't see any movement. We can't probably expect to see any movement from a still photograph. But we can expect an explanation of what the still photograph was showing. And we don't have that. I mean, all we have is the conclusion. Well, the trial court said that the victims, and I don't use their name here, attire and posture suggests she was tied up for sexual pleasure. The term's not defined, but I think blacks is one of the definitions I've seen means being tied up for sexual pleasure. And so isn't — how is that unconstitutional? And if you concede that that is suggested, why is there not evidence of that? Well, I mean, isn't the fact that all these — that people testified who saw it, the victim, the recipients, the police officer at the school, I mean, everybody said it was a sexual photo. No, but the whole — but it is a sexual photo of bondage. And bondage requires masochistic behavior. And this image does not show conduct of that nature. Now, it says or in the statute. It's bondage, fettering, or sadomasochistic. Correct. And the issue — and it's sexual activity. Does it have to show the sexual activity or does it have to show preparation for the sexual activity? And most people who think of bondage, other than the cases that you've cited, are just some measure of tying or restraint. Why isn't this — I mean, if you're talking about common knowledge, common word, why isn't the mere tying to what appears to be a curtain rod? Well, she admits she's not restrained by it. Well, she gets her hand out, but she couldn't tie herself up. Let's put it that way. She could have tied one hand, but how's she going to tie both? So somebody had to tie the other one up. Unless she used some interesting teeth or whatever to tie herself up. Somebody tied her up. And that's one of your other issues. Who? Well, I don't know. We may have to rely on your briefs for that, but we'll see what happens. But she got tied up. And that is a form of restraint, which is a form in anticipation of bondage. Well, we would contest the conclusion that that is a restraint. You know, this question about the masochism or sadomasochism also goes back to the pretrial motions in this case. And in the motion to dismiss, based on constitutional vagueness, the Attorney General's Office of the State of Illinois argued that there could not be a dismissal, because everyone knows that sadomasochism or masochism is necessary for sexual bondage. And that's cited a couple of times in our brief. So, yes, masochism or sadomasochism or forceful restraint or some conduct similar to those three or four that I just said is necessary in order to constitute the offense of bondage. All right. You wanted to touch briefly on another point, because I took you there, and you may have wanted to start elsewhere. Well, I mean, the first argument in our brief, and, you know, generally we present what we believe to be our most compelling argument first. And we do believe that there is a failure of proof beyond a reasonable doubt. So it is, of course, the argument starts with our claim that sexual bondage requires more than is shown in the image of People's Exhibit Number 2. And accepting the fact, accepting the argument that something additional must be shown besides what is shown in this case, that there, our claim being that there must be a forceful type of conduct and restricting kind of conduct. All of the cases say this, and we believe that that is key to this case and that that is the fact. And it is not proven that that type of sexual bondage existed in this case. All we have is a woman with loose straps around her wrist and the suggestion of sexual activity. A suggestion of sexual activity is not proof of sexual activity and certainly is not proof of sexual bondage. And based on that, we claim that there is a reasonable doubt of Mr. Moller's guilt that requires reversal. It would take me considerably longer than I'm sure Your Honors want to hear me also talk about the third argument in the brief. So respectfully, we would, unless there are more questions now, we would rely on our brief. I will ask Justice Kennedy, Justice Moller. We'll have an opportunity for reply if you wish after Ms. Lee. Thank you, Your Honor. Thank you. All right. Good morning, Your Honors. May it please the Court, Counsel. The first thing I would like to point out is that, in fact, Austin specifically defined bondage on paragraph 95 of the opinion. And it said it was the state or practice of being tied up for sexual pleasure, which came straight out of the Black's Law Dictionary. So we do know that was from the Illinois Supreme Court defining this very term. One point I would like to make about the statute, when you really look closely at it, there isn't really a mental state for bondage per se. What you have to do is you have to – what's prohibited is not bondage. And that's what also distinguishes this from obscenity cases. It's not illegal to engage in bondage. What is prohibited is disseminating a private picture that involves these – an act of sexual activity, which includes bondage. And as Justice Hutchinson pointed out, it doesn't include bondage plus masochism because there is an or there. Sometimes it is, sometimes it may not be. What about the fact that the next numerical, Section 5, specifically addresses sadomasochism? Could that seem to take out those, as I think Ms. Pirco reflected, violent or brutal terms from the issue of bondage? Yes, and the fact that it's also in for as – so sadomasochism, abuse, that's like abusing another person. Sadism or masochism, masochism could be injuring and enjoying and injuring to yourself. So the use of the word abuse there, but in for it does say three things in the disjunctive. So it could be any one of the three. But when you look at what they need to do, they need to intentionally disseminate it. There's your mental state. It has to be an image, which we know is defined including a depiction. Depiction does mean that it can be – we don't have to know what was really going on behind the scenes. Again, bondage in itself is not prohibited. And then they have to obtain the image in a way that they know under circumstances in which a reasonable person would know it was private. Well, here he actually conceded he knew it was private, but we do believe you can understand these circumstances. He was – he was asking for compromising photos. He said that she was sexy in the jacket and she could do interesting things, and he was asking pictures. And that's on bar 244 to 45. And then, of course, you know, as you mentioned, his response of sending back a picture with a man with an erect penis has shown that he, in fact, was sexually aroused here. We would also, to the extent the issue of the reasonable doubt, we would add in all of that consciousness of guilt and the ways he went to hide this. That goes to the entire offense, not just one piece of it. And he went and got a fake – a false – a phone under another name. He said he was a concerned parent. All of those things also show a consciousness of guilt here. But again, what's prohibited is the dissemination of this image that, in fact, he obtained in a manner that a reasonable person would know was private. And he knew she didn't consent to the dissemination of it. And, in fact, he disseminated it to the school board. Does the language of the text that something like, I've never been entrusted with these photos or something like these photos, does that indicate – can that be used in any way to indicate knowledge of the person? Absolutely. And I think he said – I don't remember the exact words, but something like, I will respond in kind. And that's when he sent that picture back. But the picture also showed an erect penis, which would typically – I mean, it was clothed. It wasn't naked, but it was a picture of that. So, you know, that does show the reaction. And, in fact, when you're talking about whether something is void for vagueness, it must be vague in all of its applications. It's not – so here, these facts, this wasn't vague. You had her telling the court that this is what we intended – that's what I intended to depict. We had – I believe it was the school resource officer who also said it depicted bondage in his mind. And at least two of them said it was sexual activity. So I don't think there's any question that that's how this was interpreted. She was in a bra and a thong and, you know, it was depicting a sexual-type behavior from the people who saw it. What I compare it to is, you know, something like in the Battery Statute, where we say conduct of an insulting and provoking nature. There may be a whole range of activities that would fall within that that doesn't make it unconstitutional or unduly vague or any of those things. Here, you do know it has to be a sexual activity, so it has to have that sexual bend to it. And other than that, it needs to be bondage, which, again, is defined in both Austin and Black's Law Dictionary. There's – I know it didn't touch much on the photographer. I would just point out that there was a state actor here. This was an individual citizen. It's almost like if we have gang cases where everybody comes in and says, I can't recall who was in the car. I don't know exactly who was in the scene. It doesn't mean you dismiss the charges. It doesn't mean they can't. That's their testimony. And what do you do? You cross-examine it. You cross-examine them. And if you look at the motion that was filed, second motion in limine, that's exactly what was asked for. We want to be able to cross-examine this fully. And the court granted that remedy, allowed full cross-examination. That's exactly what happened. Nobody stopped anybody from subpoenaing anybody. We don't have her coming forward and saying a name. She says she doesn't remember the name. This was by the testimony five years prior to when she told the assistant state's attorney, I don't remember the name of this person. That's entirely possible. We have no evidence or proof that this was perjury or anything like that. And in fact, she may not remember somebody she met three times. She was from out of state. She says she deleted the contact information. And quite frankly, I don't know that we'd be having this discussion if it were a man that said the same thing about somebody he had met up with maybe five years ago. So she says she doesn't remember. We cannot prove otherwise. It's not relevant here, but they got full cross-examination to ask her about that. And that is the only remedy that was asked for. I think that's the other thing I was going to say is I don't know how we're getting to the remedy of dismissing or vacating a charge based on a witness who testifies I don't remember something. The trial judge makes pretty clear that he doesn't really believe her. Although he then goes on to talk about the rest of the testimony. So, I mean, it's come to mind. It was cross-examined. It was an emotion in limine. Unfortunately, this was something that just didn't pop up during the course of the trial. So there was time to consider it. The judge had time to consider it. And I think as this case was anticipated initially, this was going to be a jury. So he knew he was making the decision in the end when there was a waiver of jury. So this was on, I think, kind of everybody's mind throughout the proceedings. Who was this mysterious photographer? But the fact that he says, can he say, do I think she knows who that is? Yes, I do. But let's go on. Are those two positions inconsistent? No, I don't think he was. It was a little more equivocal. The record would speak for itself. But he said, I don't know whether which would be better or not. But, you know, I'm skeptical. Does do I think she knows? You know, sure, it's possible. Possible was used. He never made a finding that she knew. And he could. How could he? But I mean, you can make a credibility finding about that. But the fact of the matter is what she told the officer was this was somebody, a friend in a hotel in Chicago in 2016 this summer. The officer never asked the name. Officer said I didn't think it was relevant because what's relevant here is who disseminated it. And that's exactly right. Based on the statute, that's where the mental state comes in. It has to be disseminated in a manner, a picture that you reasonably a reasonable person would know was to remain private. But nothing in here says it has to be an actual bondage sexual activity at the time. It needs to be an image of sexual activity. An image can be a depiction. It can be play acting in that sense. It does say portrayal in the statutory authority, I think, somewhere. Or in a case authority. But it can't be set up, right? It has to be more spontaneous. Is there a difference in portrayal and set up? Respectfully, I disagree. Section A, it says that an image includes, and it uses both the words depiction or portrayal. So both are in the statute, one or the other. So I do think, yes, it could be play sexual. I mean, I suppose a naked body is a naked body, but which would be factually the case here. She is, in fact, tied up. We aren't there. We don't know. But the point is we don't need to know because it's what it depicts or portrays under the statute. And again, if you go to Section B and you look at that, it's about the image. It says they have to be engaged in a sexual act, but a person sends an image where they're engaged in it. And an image, when you go back to that, includes a depiction or a portrayal. So it absolutely could be. It's like a movie. We see it looks very realistic. We see war. We see bodies. And that was one of the examples that had been given was somebody who was play acting a soldier. Were they in the war at that time? No. When you're watching it, do you feel that? Do you see that? Is it depicting that? One hundred percent. So I don't think it needs to be actually a sexual act in that sense at the time. It has to depict it, and then somebody has to obtain it in a way that they would know it was expected to be private and there was no consent to disseminate it. And then the prohibited conduct is to take that image and disseminate it, which is exactly what happened here. If there are no other questions, we would ask this Court to affirm. Thank you. Thank you. Ms. Perko, if you wish to respond, you may do so now. There are three or four points that we would submit. It could use some further elucidation. The State consistently draws attention to matters that we're not aware of. Matters that we're not arguing. And that we would submit does not serve to advance the proper decision in this case. So that the State is discussing dissemination. Well, we conceded that for purposes of this argument. It's talking about privacy. We've conceded that for this argument. What we have not conceded is the matter of the basic substance of the proof in this case. So there is one element and one element only that we are contesting. And that is whether or not this conduct that's portrayed is sexual conduct that is limited to bondage. And there's discussion now by the State of sexual activity versus a sexual act. Well, sexual activity can really consist of matters that are as the State has recognized. Matters that are not attached to anything involving the outside. Other than this exhibit. People's Exhibit Number Two. Now, the question seems to be, do we allow a staged version of this exhibit? Of sexual activity to be within the terms of this offense of bondage? So that the State seems to think that it is permissible for someone to make a movie. And then where no one is being hurt, no one is being oppressed. There is not the kind of conduct that is involved in a serious act such as an act of masochism. Now, Ms. Burkle, most of the cases that you cited about bondage related to obscenity and pornography, which we do know to be in certain circumstances illegal. And counsel is saying that bondage itself is not illegal, but in the context of the cases, many of the cases that you cited, and the violent conduct that was contained therein was obscenity or pornography. And therefore, we know that. But bondage itself, as I said earlier, by its very context is tying or restraining somebody up. It doesn't have to be just the act of bondage. Now, the statute adds something else to it. It says that sexual activity could be bondage. Did anybody ask this witness, and I know you weren't trial counsel, but did anybody ask this witness if there was sexual activity going on at the time? Well, I'm not certain if they put it in that term, but they did, for instance, ask her if she was restrained. She said she, I mean, after a long course of examination, she said that she guessed that was open to interpretation. And lots of people interpreted it to be sexual activity after they saw it. Not lots, but at least four. Correct. They labeled it something to do with sex, but they didn't identify it as an act of bondage. And this is particularly important because the defense went through the trouble of limiting the question. And it's clear that the sexual act must be one of bondage. So, I mean, it's not sufficient for bondage to be equated with just some undefined type of sexual conduct. But she did, I think, and it was even cited in your particular brief, that they met at a bar the first time, they had an evening of drinking, and an adult evening. Again, maybe it's an ambiguous term, but I think a reasonable interpretation of an adult evening could mean some form of sexual activity. Correct. I mean, this really goes to the sufficiency of the evidence, because it isn't, we don't know really what she was doing. I mean, that is a part of our argument. We don't know what she was doing, and it is our position that whatever she was doing is very mysterious. She could, I mean, the state could have adduced evidence in which she explained to the neophyte something about the conduct of bondage or what she was doing. For all we know, I mean, she was doing a film for use on television or whatever. I mean, we don't know what she was doing. Yes, she was doing something related to sex. Well, a lot of things, you know, with due respect are related to sex. But when you're talking about something that is actionable and exposes a person to the penitentiary, potentially, I mean, that is a matter that is obviously not one that can just rely on, yes, sex was involved. So, you know, it's our position that, and again, I mean, the state had all the time in the world to identify the sexual conduct and to explain the alleged sexual conduct, but those explanations are not in the evidence. We don't know how she got tied up. We don't really know why she got tied up. I mean, we don't know if it was an act for sexual pleasure or if it was an act for commercial dissemination. We don't know. I think we do know that she did not intend it otherwise for her. She hadn't sent it to anybody else. It was not used for anything else. She testified to that. That's what she said. Right, and we have to, we don't know otherwise, so we take that, and apparently the judge took that as the truth. Correct? She considered this private. It was not going to, she considered it private. She wasn't going to be using it to make money from. At the time she made it, she made it. I don't know, with due respect, I don't know if we know the second part of what you just said. You said was it for commercial use that would usually imply some sort of money. I mean, she said it wasn't, but there's no explanation of that. I don't know that we have to take that at face value to look at all of the arguments in this case. So, you know, I would respectfully, I guess, disagree in part. So. Any further questions? We therefore request that the conviction be reversed. Thank you. Thank you both for your argument this morning. We do appreciate it. We will take this matter under advisement. We're now going to stand adjourned for the day and have a good trip back to wherever you're going. Thank you. Thank you. Thanks.